FRANK D. WALKER, ESQ. SBN#114592
LAW OFFICE OF FRANK D. WALKER
PO BOX 120037
CHULA VISTA, CA 91912

Attorney for Debtor,
MARIA PATRICIA SILVA

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA – SAN DIEGO

MARIA PATRICIA SILVA,

    Debtor

) Case No.: 16-06109-LT13
)
) DECLARATION OF DEBTOR MARIA
) PATRICIA SILVA IN SUPPORT OF
) MOTION FOR ORDER APPROVING SALE
) OF REAL PROPERTY AND FOR
) PAYMENT OF ATTORNEYS FEES TO
) FRANK D. WALKER

I, MARIA P. SILVA, declare:

    1.    I am the debtor in this case and have personal knowledge of the matters set forth in this Declaration except for those stated under information and belief, and those matters I believe to be true.

    2.    One of the several real properties which are part of my Bankruptcy Estate is a single family residence commonly known as 3543 Dory Drive, Bonita, CA 91902-2711. The legal description of this property is as follows:

PARCEL 4 OF PARCEL MAP No. 8659, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, BEING A DIVISION OF A PORTION OF LOTS "A" AND "D" AS SHOWN ON THE AMENDED MAP OF THE SUPPLEMENTARY MAPOF THE VILLA OF SUNNYSIDE ACCORDING TO MAP

1

THEREOF No. 714, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MAY 11, 1892

The real property described immediately above is referred to hereinafter as "the Real Property."

3. Subject to approval by this Court, I have accepted an all-cash offer of $660,000 for the Real Rroperty. Copies of the Purchase Agreement and Joint Escrow Instructions together with a counter offer made by me and accepted by Buyer and a document entitled "Contingency for Sale of Buyer's Property" are attached hereto as Exhibit "A". My counter offer No. 1 was accepted by the Buyer, setting the purchase price at $660,000. Together, these documents set forth the terms and conditions of the sale. There is no financing contingency because the purchase will be all cash. Escrow for the sale is expected to close within 30 days of receiving this Court's approval of the transaction.

4. I believe it is in my best interests to sell this property now while market conditions for sellers of real property are still favorable. I am retired, in poor health and have modest fixed income. I expect to receive net sale proceeds of more than $300,000 from the sale of this property which will be of major benefit to me at this time. Attached hereto as Exhibit "B: is a document from secured lender Ditech which indicates that the balance due (loan pay-off) on their mortgage pertaining to the subject property is $319,425.49. It is addressed to my deceased spouse, Kevin Kreutzer who was the borrower when this loan was originally made by Ditech.

5. I support the request of my attorney for a guideline fee of $570 as set forth in the Rights and Responsibilities document I signed in this case for his legal services in preparing, filing and serving this motion.

Executed under penalty of perjury under the laws of the on August 28, 2018, in Chula Vista, California.

/s/ Maria Patricia Silva
Maria Patricia Silva, Debtor

Exhibit "A"

DocuSign Envelope ID: 2228D6C1-5082-4550-BA22-F73BFB6EF05D



# SELLER MULTIPLE COUNTER OFFER No. 1
(C.A.R. Form SMCO, Revised 12/15)

Date **09/14/2018**

This is a counter offer to the: [X] Purchase Agreement, [ ] Other _____ ("Offer"),
dated **09/14/2018**, on property known as **3543 Dory Dr, Bonita, CA 91902-2711** ("Property"),
between **Edward A Sandford      Lourdes Sandford** ("Buyer")
and **Maria Patricia Silva** ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C. OTHER TERMS: **Purchase Price to be $660,000**
   **Escrow to be California preferred Jorge Pardanilla**
   **Title to be First American - Angie West**
   **Contingent on Bankruptcy Trustee Approval**

   D. The following attached addenda are incorporated into this Multiple Counter Offer: [ ] Addendum No. _____

2. **BINDING EFFECT:** Seller is making Multiple Counter Offers to other prospective Buyers on terms that may or may not be the same as in this Multiple Counter Offer. This Multiple Counter Offer does not bind Seller and Buyer unless all of the following occur in the times specified below: Seller signs in paragraph 5, Buyer signs in paragraph 7, Seller signs in paragraph 8, and Buyer receives a copy of the Multiple Counter Offer with all of the signatures. (Note: Prior to the completion of all of the foregoing, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.)

3. **EXPIRATION OF SELLER MULTIPLE COUNTER OFFER:** This Multiple Counter Offer shall be deemed revoked and the deposits, if any, shall be returned to Buyer unless by 5:00PM on the third Day After the date Seller signs in paragraph 5 (if more than one Seller, then the last date) (or by _____ [ ] AM [ ] PM on _____ (Date)), (i) it is signed in paragraph 7 by Buyer, and (ii) a copy of the Multiple Counter Offer signed by Buyer is personally received by Seller or _____, who is authorized to receive it;

4. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to accept any other offer received, prior to Seller selection of this Multiple Counter Offer.

5. **SELLER MAKES THIS MULTIPLE COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.**
   _Maria Silva_                                              **Maria Patricia Silva** Date **9/14/2018 6:27:**
   _____                   _____ Date _____

6. **ACCEPTANCE OF SELLER MULTIPLE COUNTER OFFER:** Buyer's acceptance of this Seller Multiple Counter Offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by 5:00PM on the fourth Day After the date Seller signs in paragraph 5 (if more than one Seller, then the last date) (or by _____ [ ] AM [ ] PM on _____ (Date) (i) it is signed in paragraph 8 by Seller, and (ii) a copy of this Seller Multiple Counter Offer signed by Seller in paragraph 8 is personally received by Buyer or _____ who is authorized to receive it.

7. **ACCEPTANCE:** Buyer accepts the above Multiple Counter Offer (If checked [ ] SUBJECT TO THE ATTACHED COUNTER OFFER # _____ ) and acknowledges receipt of a Copy.
   _Edward A. Sandford_        **Edward A Sandford** Date **9/15/2018** Time **9:00** [X] AM [ ] PM
   _Lourdes Sandford_           **Lourdes Sandford** Date **9/15/2018** Time **9:00** [X] AM [ ] PM

8. **SELECTION OF ACCEPTED MULTIPLE COUNTER OFFER:** By signing below, Seller accepts this Multiple Counter Offer. NOTE TO SELLER: Do NOT sign in this box until after Buyer signs in paragraph 7.
   _Maria Silva_                **Maria Patricia Silva** Date **9/15/2018** Time **6:11:00 PM PDT** [ ] AM [ ] PM
   _____           Date _____ Time _____ [ ] AM [ ] PM

( _____ / _____ ) (Initials) Confirmation of Acceptance: A Copy of the Signed Seller Selection was personally received by Buyer or Buyer's authorized agent on (date) _____ at _____ [ ] AM [ ] PM. A binding Agreement is created when a Copy of the Signed Seller Selection is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document.

© 2015, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**SMCO REVISED 12/15 (PAGE 1 OF 1)**
**SELLER MULTIPLE COUNTER OFFER (SMCO PAGE 1 OF 1)**

Coldwell Banker West, 2300 Boswell Road Chula Vista CA 91914    Phone: 619.871.5363    Fax: 619-409-5610    3543 Dory Dr.
Yvonne Cromer         Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

DocuSign Envelope ID: 2228D6C1-5082-4550-BA22-F73BFB6EF05D



# CONTINGENCY FOR SALE OF BUYER'S PROPERTY
### (And Notice To Remove Contingencies)
(C.A.R. Form COP, Revised 12/17)

This is an addendum to the Purchase Agreement, ☐ Other _____ ("Agreement"), dated **September 14, 2018**,
on property known as **3543 Dory Dr, Bonita, CA 91902** ("Seller's Property"),
between **Edward A. Sandford, Lourdes Sandford** ("Buyer")
and **Maria Silva Trust** ("Seller").

**SALE OF BUYER'S PROPERTY:**

1. A. **LENGTH OF CONTINGENCY:** The Agreement is contingent on the close of escrow of Buyer's property, described as: **5169 Hawley Blvd. San Diego CA 92116** ("Buyer's Property") by the earliest of: (i) the scheduled close of escrow of Seller's Property specified in the Agreement; (ii) the date specified in paragraph 3; or (iii) Other ☐ _____. Buyer shall within **2** (or ___) Days After close of escrow of Buyer's Property, provide documentation of close to Seller.
   B. **CONTINUATION OF CONTINGENCY:** This contingency can only be removed in writing. Even if Buyer removes this contingency, unless Buyer also performs all actions pursuant to paragraph 8, Seller retains the right to cancel under paragraph 5. Once Buyer's Property closes, Buyer can no longer use this contingency to cancel the Agreement.
2. ☐ **BUYER'S PROPERTY NOT IN ESCROW:** Buyer's Property is **not** now in escrow and (check boxes as applicable):
   A. ☐ is ☐ is not yet listed for sale. If listed, Listing Broker is _____ MLS, # _____.
   B. Buyer has **17** (or ___) Days to enter into escrow for the sale of Buyer's Property. Buyer shall, within the time specified, provide Seller with Copies of the contract, escrow instructions and all related documents ("Escrow Evidence") showing that Buyer's Property has entered escrow.
3. ☒ **BUYER'S PROPERTY IN ESCROW:** Buyer's Property **is in escrow** and escrow is scheduled to close on **October 12, 2018** (date).
   A. Escrow Holder is **Foundation Escrow North**, (escrow # **N12392-AJ**).
   B. Buyer shall, within **5 Days** After Acceptance, deliver to Seller Escrow Evidence that Buyer's Property is in escrow.
4. **CANCELLATION OF BUYER'S PROPERTY:** If Buyer's Property is in or enters escrow, and either party to that escrow gives notice to the other to cancel that contract, Buyer, within **2** (or ___) Days thereafter, shall give Seller written notice of that cancellation.
5. **SELLER RIGHT TO CANCEL:** Seller may cancel the Agreement in writing as follows:
   A. After first giving Buyer a Notice to Buyer to Perform to provide documentation of close of Buyer's Property, if Buyer's Property does not close escrow by the time specified in paragraph 1,
   B. After first giving Buyer a Notice to Buyer to Perform, if Buyer fails to provide Escrow Evidence within the time specified in paragraph 2(B) or 3(B), or
   C. If Buyer gives notice to Seller of either party's cancellation of contract for Buyer's Property, or
   D. If Buyer, after being given a notice to remove contingencies, fails to remove the contingencies specified in 8A.
6. **BUYER RIGHT TO CANCEL:** Buyer may cancel the Agreement in writing if, prior to Buyer's removal of the contingency for sale of Buyer's Property, (i) Buyer's Property does not close escrow by the time specified in paragraph 1, or (ii) the buyer for Buyer's Property gives notice to Buyer of intent to cancel the escrow for Buyer's Property.
7. A. **TIME PERIODS:** Time periods in the Agreement for inspections, contingencies, covenants, close of escrow, and other obligations shall begin as specified in the Agreement, or ☐ on the Day After Buyer Delivers to Seller any of the following: (i) Escrow Evidence for Buyer's Property, or (ii) Buyer's election in writing, signed by Buyer, to begin time periods, or (iii) Buyer's removal of this contingency for the sale of Buyer's Property.
   B. **BUYER'S DEPOSIT:** Buyer's deposit shall be delivered to escrow within the time specified in the Agreement, or ☐ within 3 business days After Buyer Delivers to Seller any of the following: (i) Escrow Evidence for Buyer's Property, or (ii) Buyer's election in writing, signed by Buyer, to begin time periods, or (iii) Buyer's removal of this contingency for the sale of Buyer's Property.
8. **BACK UP OFFERS AND SELLER RIGHT TO HAVE BUYER REMOVE CONTINGENCIES OR CANCEL:** After Acceptance, Seller shall have the right to continue to offer Seller's Property for sale for back-up offers. If Seller accepts a written back-up offer and provides Buyer a Copy of the signed, accepted back-up offer:
   A. **Immediate Right to Notify Buyer to Remove Sale of Property Contingency:** Seller shall have the right to immediately give written notice to Buyer to, in writing: (i) remove this contingency; (ii) remove the loan contingency, if any; and (iii) provide verification of sufficient funds to close escrow without the sale of Buyer's Property. If Buyer fails to complete these actions within **3** (or ___) Days After Delivery of such notice, Seller may then immediately cancel the Agreement in writing.
OR B. ☒ (If checked) **Delayed Right to Notify Buyer:** Seller shall not invoke the notice provisions in paragraph 8A: (i) within the first **17** (or ___) Days After Acceptance; or (ii) (if checked) ☐ during the term of the Agreement.

By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a Copy of this Addendum.

Date 9/14/2018  Buyer *Edward A. Sandford* (DocuSigned)  
Buyer *Lourdes Sandford* (DocuSigned)  
Date 9/15/2018 6:11:00 PM PDT  Seller *Maria Silva* (DocuSigned) Maria Silva Trust

**NOTICE TO REMOVE CONTINGENCIES:** Seller hereby gives notice to Buyer to remove the contingencies and take the actions specified in paragraph 8A. (Note: Not to be delivered until the time specified in 8A or B.)
Seller _____ Date _____ Seller _____ Date _____

(___/___) (Initials) **CONFIRMATION OF RECEIPT:** A Copy of this Signed Notice to Buyer to remove contingencies and take actions was personally received by Buyer or authorized agent on _____ (date), at _____ ☐ AM ☐ PM. Completion of this confirmation is not legally required. It is solely intended to evidence the date that confirmation or receipt has occurred.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020
© 2008-2017, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COP Revised 12/17 (PAGE 1 OF 1)
**CONTINGENCY FOR SALE OF BUYER'S PROPERTY (COP PAGE 1 OF 1)**

Coastal Rock Realty, 11622 El Camino Real, Ste. 100 San Diego, CA 92130    Phone: 619-274-1403    Fax: 619-270-2564    3543 Dory Dr
Charlene Ekoniak    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com



# CALIFORNIA
# RESIDENTIAL PURCHASE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS
(C.A.R. Form RPA-CA, Revised 12/15)

Date Prepared: **09/14/2018**

1. **OFFER:**
   A. THIS IS AN OFFER FROM **Edward A. Sandford, Lourdes Sandford** ("Buyer").
   B. THE REAL PROPERTY to be acquired is **3543 Dory Dr, Bonita, CA 91902**, situated in **Bonita** (City), **San Diego** (County), California, **91902** (Zip Code), Assessor's Parcel No. **590-140-29-00** ("Property").
   C. THE PURCHASE PRICE offered is **Six Hundred Fifty Thousand** Dollars $ **650,000.00**.
   D. CLOSE OF ESCROW shall occur on [X] **30 Days or Sooner** (date)(or ☐ _____ Days After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

2. **AGENCY:**
   A. DISCLOSURE: The Parties each acknowledge receipt of a [X] "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. CONFIRMATION: The following agency relationships are hereby confirmed for this transaction:
   Listing Agent **Coldwell Banker West** (Print Firm Name) is the agent of (check one): [X] the Seller exclusively; or ☐ both the Buyer and Seller.
   Selling Agent **Coastal Rock Realty** (Print Firm Name) (if not the same as the Listing Agent) is the agent of (check one): [X] the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
   C. POTENTIALLY COMPETING BUYERS AND SELLERS: The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Deposit shall be in the amount of ............................................. $ **5,000.00**
      (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days after Acceptance (or _____);
      OR (2) ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____) to the agent submitting the offer (or to _____), made payable to _____. The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within 3 business days after Acceptance (or _____).
      Deposit checks given to agent shall be an original signed check and not a copy.
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of ............ $ _____
      within _____ Days After Acceptance (or _____).
      If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.
   C. [X] ALL CASH OFFER: No loan is needed to purchase the Property. This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or ☐ Buyer shall, within **3** (or _____) Days After Acceptance, Deliver to Seller such verification.
   D. LOAN(S):
      (1) FIRST LOAN: in the amount of ............................................. $ _____
      This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____. This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (2) ☐ SECOND LOAN in the amount of ............................................. $ _____
      This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____. This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (3) FHA/VA: For any FHA or VA loan specified in 3D(1), Buyer has **17** (or _____) Days After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this Agreement.
   E. ADDITIONAL FINANCING TERMS: _____

   F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE in the amount of ............................ $ **645,000.00**
      to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. PURCHASE PRICE (TOTAL): ............................................. $ **650,000.00**

Buyer's Initials ( *EdS* ) ( *LS* )   Seller's Initials ( *MS* ) ( _____ )

© 1991-2015, California Association of REALTORS®, Inc.
**RPA-CA REVISED 12/15 (PAGE 1 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

H. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or ___ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

I. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or ___ ) Days** After Acceptance.

J. **LOAN TERMS:**

(1) **LOAN APPLICATIONS:** Within **3 (or ___ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

(3) **LOAN CONTINGENCY REMOVAL:**
Within **21 (or ___ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(4) ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

(5) **LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

K. **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

4. **SALE OF BUYER'S PROPERTY:**

A. This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

OR B. ☒ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

5. **ADDENDA AND ADVISORIES:**

A. **ADDENDA:**

| | |
|---|---|
| ☐ Addendum # ___ (C.A.R. Form ADM) | |
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

B. **BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Probate Advisory (C.A.R. Form PA) | ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ Other |

6. **OTHER TERMS:** _____

7. **ALLOCATION OF COSTS**

A. **INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

(1) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☒ environmental ☐ Other: _____ prepared by **Sellers Choice**.

(2) ☐ Buyer ☒ Seller shall pay for the following Report **Section One Termite/Pest Inspection Report** prepared by **Sellers Choice**.

(3) ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____.

Buyer's Initials ( EdS ) ( LS )   Seller's Initials ( ML ) ( ___ )

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**
(1) ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.
(2) (i) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.
(ii) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.
(iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**
(1) (a) ☒ Buyer ☒ Seller shall pay escrow fee *50/50*
 (b) Escrow Holder shall be *Foundation Escrow North or Sellers Choice*
 (c) The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.
(2) (a) ☐ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 13E
 (b) Owner's title policy to be issued by *Fidelity Title or Sellers Choice*
 (Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee
(2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee
(3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee
(4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
(5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
(6) Buyer to pay for any HOA certification fee.
(7) ☐ Buyer ☒ Seller shall pay for any private transfer fee *If applicable*
(8) ☐ Buyer ☒ Seller shall pay for *Section One Termite Clearance*
(9) ☐ Buyer ☐ Seller shall pay for
(10) ☐ Buyer ☒ Seller shall pay for the cost, not to exceed $ *650.00* , of a standard (or ☒ upgraded) one-year home warranty plan, issued by *Buyers Choice* , with the following optional coverages: ☐ Air Conditioner ☐ Pool/Spa ☐ Other:
Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
OR ☐ Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.
B. **ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☒ all stove(s), except _____ ; ☐ all refrigerator(s) except _____ ; ☐ all washer(s) and dryer(s), except _____ ;
(3) The following additional items: _____
(4) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.
(5) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
(6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____ , and (ii) are transferred without Seller warranty regardless of value.
C. **ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____ . Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).

Buyer's Initials (_____) (_____)     Seller's Initials (_____) (_____)

9. **CLOSING AND POSSESSION:**
   A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
   B. **Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or ( ____ ☐ AM/ ☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ____ calendar days after Close Of Escrow; or (iii) ☐ at ____ ☐ AM/ ☐ PM on _____.
   C. **Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.
   D. **Tenant-occupied property: Property shall be vacant** at least **5 (or ____ ) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**
      OR ☐ **Tenant to remain in possession** (C.A.R. Form TIP).
   E. At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.
   F. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

10. **STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
    A. (1) Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (ii) unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).
       (2) Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Listing Agent, if any, has completed and signed the Listing Broker section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.
       (3) **Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.
       (4) Within the time specified in paragraph 14A, (i) Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).
       (5) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.
       (6) In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**
       (7) If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.
    B. **NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; (ii) disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and any other information required for those zones.
    C. **WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).
    D. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)
    E. **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.
    F. **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
       (1) **SELLER HAS: 7 (or ____ ) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials ( **ElS** ) ( **LS** )                                                                                      Seller's Initials ( **MJ** ) ( ____ )

Property Address: **3543 Dory Dr, Bonita, CA 91902**      Date: **September 14, 2018**

(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ___ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). **(vi)** private transfer fees; **(vii)** Pet fee restrictions; and **(viii)** smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

11. **CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold **(a)** "AS-IS" in its PRESENT physical condition as of the date of Acceptance and **(b)** subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.
    A. Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
    B. Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
    C. **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**
12. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
    A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; **(iv)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); **(v)** review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.
    B. Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
    C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
    D. **Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.
13. **TITLE AND VESTING:**
    A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.
    B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
    C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
    D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials       Seller's Initials 

RPA-CA REVISED 12/15 (PAGE 5 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     3543 Dory Dr

E. Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer.  A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

14. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

   A. **SELLER HAS: 7 (or ____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

   B. **(1) BUYER HAS: 17 (or _10_ ) Days** After Acceptance, unless otherwise agreed in writing, to: **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

   **(2)** Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

   **(3)** By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ____ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

   **(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

   **(5) Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for **17 (or ____ ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

   C. ☐ **REMOVAL OF CONTINGENCIES WITH OFFER:** Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.

   D. **SELLER RIGHT TO CANCEL:**

   **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

   **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B5; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

   E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ____ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

   F. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

   G. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or ____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

   H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

Buyer's Initials ( _ElS_ ) ( _LS_ )  Seller's Initials ( _ML_ ) ( ____ )
RPA-CA REVISED 12/15 (PAGE 6 OF 10)
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 6 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com        3543 Dory Dr

DocuSign Envelope ID: 2228D6C1-5082-4550-BA22-F73BFB6EF05D

Property Address: **3543 Dory Dr, Bonita, CA 91902** Date: **September 14, 2018**

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5** (or ☐ ___ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**
   **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ___ ) Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.
   **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( EdS ) ( LS )   Seller's Initials ( MJ ) ( _____ )

RPA-CA REVISED 12/15 (PAGE 7 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 10)**



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com      3543 Dory Dr

Property Address: **3543 Dory Dr, Bonita, CA 91902** Date: **September 14, 2018**

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

**21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. **AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

Buyer's Initials _EdS_ / _LS_    Seller's Initials _ML_ / _____

**22. DISPUTE RESOLUTION:**

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 22C.

B. **ARBITRATION OF DISPUTES:**

The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials _EdS_ / _LS_    Seller's Initials _ML_ / _____

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:**

(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( _EdS_ ) ( _LS_ )    Seller's Initials ( _ML_ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 8 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 10)**

    (2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

    (3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.
24. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.
25. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.
26. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).
27. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.
28. **TERMS AND CONDITIONS OF OFFER:**
   This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.
29. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**
30. **DEFINITIONS:** As used in this Agreement:
    A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.
    C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
    D. **"Close Of Escrow"**, including **"COE"**, means the date the grant deed, or other evidence of transfer of title, is recorded.
    E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
    F. **"Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
    G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
    H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    I. **"Deliver"**, **"Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).
    J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
    K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.
31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____**Char Ekoniak**_____, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by [X]  **7:00**  [ ] AM/[X] PM, on **September 15, 2018** (date)).

[ ] One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date 9/14/2018  BUYER _*Edward A. Sandford*_
(Print name) *Edward A. Sandford*     3DDA3EE9867C40D...

Date 9/14/2018  BUYER _*Lourdes Sandford*_
(Print name) *Lourdes Sandford*     B9F0B0ADCEEA4D0...

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).           Seller's Initials (_MS_) (____)

Property Address: *3543 Dory Dr, Bonita, CA 91902*   Date: *September 14, 2018*

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:** _____.

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date _____ SELLER _____
(Print name) *Maria Silva Trust*
Date *9/15/2018 6:11:00 PM PDT* SELLER — DocuSigned by: *Maria Silva* — 608A472C6625441...
(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( ____ / ____ ) (Do not initial if making a counter offer.) **CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)          personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
☐ AM/ ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker **(Selling Firm)** and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) *Coastal Rock Realty*   DRE Lic. # *01871790*
By DocuSigned by: *Char Ekoniak*   *Char Ekoniak* DRE Lic. # *01390397*   Date *9/14/2018*
By _____   DRE Lic. # _____   Date _____
Address *11622 El Camino Real, Suite 100*   City *San Diego*   State *CA*   Zip *92130*
Telephone *(619)274-1403*   Fax *(619)270-2564*   E-mail *char@coastalrockrealty.com*
Real Estate Broker (Listing Firm) *Coldwell Banker West*   DRE Lic. # _____
By *Yvonne Cromer*   *Yvonne Cromer* DRE Lic. # _____   Date _____
By DocuSigned By: *Yvonne Cromer*   *Robert Cromer* DRE Lic. # _____   Date _____
Address _____   City _____   State _____   Zip _____
Telephone _____   Fax _____   E-mail _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), counter offer numbers _____ ☐ Seller's Statement of Information and _____, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____   Escrow # _____
By _____   Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
                          Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ ) ( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
                        Seller's Initials

©1991- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer Acknowledges that page 10 is part of this Agreement  ( *EdS* ) ( *LS* )
                                                            Buyer's Initials

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
® 525 South Virgil Avenue, Los Angeles, California 90020

**RPA-CA REVISED 12/15 (PAGE 10 of 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**

Exhibit "B"



Ditech Financial LLC
PO Box 6154
Rapid City, SD 57709-6154
Phone: 888-298-7785
Fax: 866-529-1471
www.ditech.com

August 28, 2018

Kreutzer, Kevin
3543 Dory Drive
Click here to enter text.
Bonita CA 91902

Account #: xxxxx5467-8       Name: In re: Maria Patricia Silva
Property Address: 3543 Dory Drive
Bonita, CA 91902

The payoff on the above-referenced account is: $319,425.49
This includes the following:

| | | | |
|---|---|---|---|
| Principal Balance: | 307,134.87 | Other Fees: | 184.00 |
| Interest: | 17,114.57 | Other Credits: | |
| Paid Ahead Interest: | | Deferred Interest: | |
| Hazard/Flood Insurance*: | | Escrow: | 4042.90 |
| Corporate Advances: | | Unapplied Funds: | -9050.85 |
| Late Fees: | | Payments Held In Suspense: | |
| Returned Check Fees: | | | |

This amount is good through: 08/28/2018 and will accrue $47.33 interest per day after this date. Any transactions that occur on or after 08/28/2018 may change the payoff amount. All payoffs should be mailed to:

| Wiring Instructions – Fees Apply | Overnight Address – Fees Apply | Standard Mail – No Fees |
|---|---|---|
| ABA: 026009593<br>Account: 1257813511<br>Account Name: Ditech Finanacial LLC<br>Bank Name: Bank of America, N.A. | Ditech<br>ATTN: Payoff 9052<br>5505 N Cumberland Avenue<br>Suite 307<br>Chicago, IL 60656 | Ditech<br>Dept CH9052<br>Palatine, IL 60055-9052 |

MEMO SECTION: The memo section (also referred to as Advice, Instructions to Beneficiary, or OBI) of the payoff wire must include the account name and 9-digit Ditech account number. If this information is not included or misplaced, the payoff cannot be applied and will be rejected. The result of rejection will require a new payoff quote and likely a larger amount due.

Ditech Financial LLC ("Ditech") reserves the right to demand additional funds to correct any error or omission in the above payoff figure that was calculated in good faith, whether the error or omission is mathematical, clerical, typographical, or for any transactions that occurred on or after the date of this payoff quote.

If you are currently in an active bankruptcy, the amounts reflected above are contractual and may not be the amounts owed pursuant to the bankruptcy plan.

Payoff Quote – Generic Letter 04/27/2015                                          LTR-042

Payoff funds must be remitted using a money order, cashier's check or other certified instrument unless a Title Company remits funds. Any refund (if applicable) will be mailed to the customer's address unless otherwise instructed.

If you currently have your monthly payment set up on automatic withdrawal, or have any pending payments setup, we advise you to contact Customer Service at the below phone number to cancel your activation/payments prior to payoff.

For Home Equity Line of Credit accounts, the borrower must send a request in writing to close the account.

For release of documents, please refer to the following for your account type:

- Title for manufactured homes or personal property: With the exception of a few states that require the titles to be mailed to the Department of Motor Vehicles, titles will be mailed to the borrower unless instructed otherwise. Instructions should be included with the payoff check.
- Uniform Commercial Code (UCC) for manufactured homes or personal property: These will be mailed to the county/state for recording, and will not be mailed to the party remitting the payoff check.
- Mortgage Releases, satisfactions or reconveyances: These will be mailed to the county for recording and will not be mailed to the party remitting the payoff check.

If the funds received are not sufficient to pay off the account in full, the funds will not be posted until the remaining amount is received to pay off the account in full.

If you have any other questions, please call Customer Service at 888-298-7785.

Sincerely,

Ditech
888-298-7785
Monday-Friday 7AM-5PM Mountain Time

*Any existing lender-placed property insurance previously purchased by Ditech on the loan account will be canceled upon loan payoff and any related unearned premiums will be refunded.

**BANKRUPTCY NOTICE If you are in bankruptcy or have been discharged in bankruptcy, this letter is for informational purposes only and is not intended to collect a debt, or an act to collect, assess, or recover all or any portion of the debt from you personally.**